Edwin L. Palmore, by his father and next friend, George W. Palmore, *v.* Morris, Tasker & Co., incorporated, Appellant, George Lodge and William T. Parker.

*Negligence—Visible defect in building—Change of ownership—Vendor and vendee.*

In an action to recover damages for personal injuries caused by the fall of a dangerous and badly secured gate in a building adjoining a public sidewalk, recovery cannot be had against the defendant where it appears that on the day before the accident the defendant had conveyed the property by deed to another person, and that the grantee had taken possession of it.   In such a case the grantee in possession is the person liable for the injury, since the law presumes that he examined the property before entering into possession, and was cognizant of its situation, its surroundings, and the character of the structures upon it, as well as the condition of their repair.

Argued March 23, 1897.   Appeal, No. 608, Jan. T., 1896, by defendant, from judgment of C. P. No. 2, June T., 1895, No. 592, on verdict for plaintiff.   Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ.   Reversed.

Trespass for personal injuries to plaintiff, which were alleged to have been caused by the fall of a gate, not properly secured, in a building adjoining a public sidewalk.   Before PENNY-PACKER, P. J.

The facts appear by the opinion of the Supreme Court.

The court charged in part as follows :

[It seems that on the Wednesday before, if we may accept the undisputed testimony, some wagons in going out pulled this door off, and the evidence is that at the time this accident occurred there was no crossbar on it and the transom was out, and there is evidence to show that at the lower part where the door was fastened the woodwork was rotten. The question is whether the door was in such a condition as to be dangerous to the public, whether it had remained in that condition long enough to charge those who were responsible for keeping it in repair with notice, so that in the exercise of ordinary prudence that repair would have been made.

It seems that on May 10, the day before this accident occurred, the defendants, Morris, Tasker & Company, had consummated by the execution of a deed a sale of these premises to a man named Lodge. They were, at the place where the accident occurred on these premises, in a sort of transition state. It appears that some twenty-five or twenty-seven men of the defendants were still there at work, and it also appears that Mr. Lodge had done some acts which have the look of taking possession on May 10. That is, some acts were done under his direction which were the exercise of control. His men directed the workmen of the defendants to stop their work. After that the order was recalled, and the letters would indicate that for the removal of the scrap iron and the machinery the defendants were to have until the following Monday.

Now, the astuteness of counsel in the presentation of the case to you has made this take the appearance of being the turning point in the case. The question, however, is not one of the exact time of the transfer, nor one of the delivery of possession. The real question is as to whether or not there was a failure of duty on the part of the defendants, and whether that failure of duty was the cause of this accident. No doubt, as soon as Mr. Lodge took possession of this property, then a duty would begin with him. He ought within a reasonable time to see that the property which he had purchased, if it was in a dangerous condition to the public, was put in repair, but with that question we have nothing to do in this case. The real question in the

case is not as to when there was a transfer of the possession, nor when there was a transfer of the title, but was there any act of commission or of omission upon the part of the defendants which amounted to that want of reasonable care which the law makes negligence, and whether you find that to be the fact.

To illustrate, if I take a package of dynamite and put it into a hammer and sell the hammer, I have there parted with the title, and when I hand the hammer over I have parted with the possession. If, a week later, somebody, in striking with that hammer, should explode the dynamite, and thus cause injury to himself or others, the question would be whether it was my negligence which led to that result.

Or, if I have an old knife, and it is worn out in my judgment, and I conclude to throw it away, and I throw it out of the window, I have parted with the ownership and parted with the possession. But suppose in falling to the street it should strike someone in the eye and do him an injury, or suppose it lies upon the pavement until dark, and someone using the street in the ordinary way should tread upon it and thus be injured. The question would be not when I parted with the ownership in the knife, but whether or not the facts were such as to show that I, in doing what I did, exercised reasonable care.

Take the case before us, and suppose the accident had occurred say, not a day later, but a half hour after this deed had been put upon record and possession had been taken. Now, that would not have been long enough in the very nature of things to have enabled Mr. Lodge to have made the repairs which were necessary, and if the contention which has been presented to you were correct, somebody might be very seriously injured and nobody be liable for the consequences. So, as I say to you, the real question in the case is not as to what the exact time when the transfer occurred was, but whether or not the circumstances of this case are such as to show that the defendants here were negligent in the failure to perform the duty, or any duty, in the repair of these premises, and that negligence was the cause of the accident.] [1]

Verdict and judgment for plaintiff for $2,500. Morris, Tasker & Co., appealed.

*Error assigned* among others was (1) portion of charge as above, quoting it.

*Gavin W. Hart*, with him *F. H. Bohlen*, for appellant.—For an injury occurring by neglect to keep premises adjoining a public highway in repair, the law holds the party in possession responsible, and if there be no one in possession, it refers the injured party to the owner of the legal title: Grier v. Sampson, 27 Pa. 183; Blunt v. Aikin, 15 Wendell, 522.

Where a nuisance is created by an owner, and he subsequently leases, he alone is liable for the result of his acts, unless the tenant was also cognizant of the nuisance and continued to maintain it, when there may be a divided responsibility: Wunder v. McLean, 134 Pa. 334; City of Reading v. Reiner, 167 Pa. 41.

Where a person builds a structure for a specific purpose, and it is negligently done, he and not his tenant is liable for any damages: Carson v. Godley, 26 Pa. 111; Godley v. Hagerty, 20 Pa. 387; Walden v. Finch, 70 Pa. 460; McKenna v. Paper Co., 176 Pa. 306.

Where an independent contractor has finished his work and turned the property over to the owner, the owner is liable for injuries sustained by faulty structure: Curtin v. Somerset, 140 Pa. 70; Harrison v. Collins, 86 Pa. 153.

*Avery D. Harrington*, for appellee.—Morris, Tasker & Co. were liable for the injury: Plumer v. Harper, 3 N. H. 88; Eastman v. Amoskeag Mfg. Co., 44 N. H. 144; Ahern v. Steele, 115 N. Y. 203; Timlin v. Standard Oil Co., 126 N. Y. 514; Wunder v. McLean, 134 Pa. 334; Knauss v. Brua, 107 Pa. 85; Fow v. Roberts, 108 Pa. 489; Thompson v. Gibson, 7 M. & W. 456.

OPINION BY MR. JUSTICE DEAN, July 15, 1897:

On May 11, 1895, the plaintiff, a boy about ten years old, was standing on the pavement on the north side of Morris street, Philadelphia, looking through a partially opened gate into the large foundry works, before that time carried on at that place by Morris, Tasker & Company, defendants. While so standing the gate fell and seriously injured him. On that day, the works no longer belonged to Morris, Tasker & Company.

The accident occurred on Saturday; on Friday, the day previous, they had conveyed the property by deed to George Lodge, and the deed had been put on record the same day. When defendants delivered the deed, they also gave to Lodge a letter, of which this is a copy:

"PHILADELPHIA, May 10th, 1895.

"MR. GEORGE LODGE.

"Dear Sir: We write to state that we can allow you to take possession 5/13/95 of all the buildings on the square of ground for which settlement has been made to-day, with the exception of the storehouse on the corner of Fifth and Tasker streets, you to allow us two weeks to vacate and remove the material therein belonging to us. The power plant, consisting of boilers, engines, and so forth, which belong to us, we will remove after you notify us that the parties who leased the same are through and that the contents are ready for us to haul away. Please notify us when we can remove all material belonging to us, that is power plant now leased by the Southern Electric Company. There are two planers, one punch, a part of tramway belonging to Mr. Smith, and he asks that we have until Wednesday, May 15th, to haul away.

"Yours very respectfully,

"MORRIS, TASKER & CO."

It will be noticed that while in the heading the letter is dated May 10, in the body of it the date is May 13, which was the following Monday. But Lodge acted on the assumption that his possession commenced on the 10th and his brother and Cronin, an employee, went upon the premises and took formal possession; so announced to those in the building, and gave orders, stopping a man named Smith from removing scrap iron and machinery, which he had purchased from defendants before the conveyance to Lodge, and which Lodge did not allege had passed to him by the deed. The man hauling away the machinery, then, the same day, May 10, called on Morris, Tasker & Company, and obtained from them a letter to Johnson, their head workman at the foundry, of which this is a copy:

"May 10th, 1895.

"MR. WILLIAM C. JOHNSON,

"Paschall Iron Works, Philadelphia,

"Dear Sir: This is to notify you that Mr. Lodge is not to interfere in any way with the hauling of the scrap iron from the works until Monday; also that Mr. Smith is to have until Wednesday to haul out his machinery, all as per letter of acceptance by Mr. Lodge to-day.

"Very respectfully yours,

"MORRIS, TASKER & Co."

On being shown this letter, Cronin, who had acted for Lodge, permitted the purchasers of the personal property to go on removing it, but excluded them from any occupation of the premises not necessary to the removal. Cronin and another watchman of Lodge maintained for him formal possession all Friday afternoon and night, and Saturday morning until eight o'clock, when the gate fell. Lodge himself testifies that when the settlement had been made between him and defendants on Friday, in pursuance of which the deed was delivered to him, he telephoned to his brother, and the brother and Cronin took possession. He says that afterwards, on the evening of the same day, he told them he had not the right of possession until Monday, but the uncontradicted evidence is that Cronin and another employee of Lodge remained on the premises until after the accident.

The plaintiff, treating Morris, Tasker & Company as in possession, brought suit against them for damages, averring that his injury was the result of their negligence in maintaining a dangerous and badly secured gate on a building adjoining a public sidewalk. There was evidence sufficient to warrant the jury in finding the gate was out of repair, and that there was negligence on part of him whose duty it was to repair; but the question on which the case must turn is, were defendants answerable for this neglect, after delivery of the deed, and possession under it taken by Lodge?

At the trial, among many written points, defendants' counsel asked the court to instruct the jury as follows: "2. If Morris, Tasker & Co.'s title had been divested and possession surrendered before the accident, the plaintiff cannot recover against them. *Answer:* I decline that point."

The view the learned judge of the court below took of the law applicable to the facts is best shown by the following excerpt from the general charge:

" The question, however, is not one of the exact time of the transfer, nor one of the delivery of possession. The real question is as to whether or not there was a failure of duty upon the part of the defendants, and whether that failure of duty was the cause of this accident. No doubt, as soon as Mr. Lodge took possession of this property, then a duty would begin with him. He ought within a reasonable time to see that the property which he had purchased, if it was in a dangerous condition to the public, was put in repair, but with that question we have nothing to do in this case. The real question in the case is not as to when there was a transfer of the title, but was there any act of commission or of omission upon the part of the defendants which amounted to that want of reasonable care which the law makes negligence, and whether you find that to be the fact."

Under fuller instructions in accord with this view, the jury found for plaintiff, and we have this appeal by defendants, assigning for error, among others, the refusal of the court to affirm their second point.

It is clear from plaintiff's own testimony that the title and constructive possession of the real estate vested in Lodge, absolutely, on the 10th of May, the day before the accident. It is also clear that in pursuance of the grant by deed he attempted to take formal possession within an hour after delivery; and while the oral stipulation between him and the grantors was that actual possession was not to be taken until the following Monday, nevertheless, there is evidence that he took possession on Friday, and did not restore it to defendants, who assented to his action, stipulating only for the right of entry and exit for removal of the property which did not pass by the deed. Under the facts, then, unquestionably Lodge acquired title, and in fact took possession of the real estate on which was a defective structure, the day before an accident resulted from neglect to repair it.

The authorities on the exact question are very meager. As between a landlord and tenant at will, or for a term, the weight of authority is, that the landlord continues answerable, though out of possession, for injuries resulting to third parties from negligently constructed buildings and structures on the land where they were erected by the landlord. The very letting by him of to him known defective property, without stipulation

for repair, is significant of continuous negligence on his part: Godley v. Hagerty, 20 Pa. 387, and the cases following it down to McKenna v. Paper Co., 176 Pa. 306. But this is not a letting of the land by a landlord to a tenant; it is an absolute sale, whereby the owner divests himself of title and all right to possession, or of re-entry for repairs, or for any other purpose; any future possession in face of his deed, unless there be an independent stipulation to the contrary, would be a palpable trespass; and with his surrender of possession, all the duties incident to ownership, as to him, were at an end; from the moment Lodge took possession under his deed, the duties theretofore incumbent on Morris, Tasker & Company were transferred to him, and he became answerable to the public for neglect in their performance.

The learned judge of the court below adopts a different event for the commencement of liability on the part of the grantee than possession taken under the deed; he says "he ought, within a reasonable time, to see that the property which he had purchased, if it was in dangerous condition to the public, was put in repair." That is, he imports into the deed an implied covenant on part of the grantors that they will be answerable to third parties for defects in the building for a reasonable time after the grantee takes possession. Public policy does not demand that such clogs on the transfer of real estate should be imposed by construction; nor does the law warrant such an implication. Before he purchased the real estate the law presumes the grantee examined the property, and was cognizant of its situation, surroundings, the character of the structures upon it and their condition of repair. Without an express covenant by the grantors, as between them and the grantee, there was no duty on the grantors to repair; the purchaser, thereafter, assumed that duty, because he then became the owner and occupant. If the grantors after possession by Lodge, the grantee, owed no duty to him, why should there be neglect in performance on their part as to the public? It is not even the case of no actual occupancy, where the law casts the duty on the owner, but one where the owner and actual occupant were the same.

If, the accident did not happen during the ownership and occupancy of Morris, Tasker & Company, and the evidence showed

that it happened after Lodge took possession, the question for the jury was not whether there was negligence on part of defendants in maintaining a defective gate; the real question on the evidence was, did Lodge take possession of the property described in his deed on Friday the 10th of May? If he did, then the accident which occurred on the 11th must be imputed to the negligence of the owner and occupant of the premises, and not to Morris, Tasker & Company who before that time were owners and occupants. And this is the principle announced in Grier v. Sampson, 27 Pa. 183, Cheetham v. Hampson, 4 T. R. 318, and Blunt v. Aikin, 15 Wendell, 522, although the facts in all these cases are different from those before us. And while laying down this rule in this case, we do not intend to be understood as declaring there can be no exception to it. There may be a case where the grantor conceals from the grantee a defect in a structure known to him alone, and not discoverable by careful inspection, that the owner would be held liable, though out of possession; but that is not this case; the rotten gate, the testimony shows, was as obvious before the accident as afterwards, and the reasonable time for the purchaser to discover it was not limited to the twenty hours after he took possession, but to the weeks and months pending the negotiations, before the delivery of the deed.

On the undisputed evidence the jury should have been instructed to find for defendants.

The judgment is reversed.