**Betty Lorraine CAPORALETTI et al., Plaintiffs,**

v.

**A–F CORPORATION, Defendant.**

**Civ. A. No. 4934–53.**

United States District Court

District of Columbia.

Jan. 25, 1956.

H. Max Ammerman and John R. Daily, Washington, D. C., for defendant.

HOLTZOFF, District Judge.

The question presented in this case is whether a person who is engaged in the business of building and selling dwelling houses is liable to the purchaser of one of the homes, for personal injuries sustained as a result of defective construction caused by the builder's negligence. The question is one of novel impression in this jurisdiction, as it appears never to have been determined either by the Supreme Court or by the United States Court of Appeals for the District of Columbia Circuit. The matter is before this court on the defendant's motion for judgment notwithstanding the verdict, after a trial on the merits resulting in a verdict in favor of the plaintiffs.

Briefly the salient facts are as follows. The defendant was engaged in the building of dwelling houses and was developing a suburban area in which it was constructing several hundred homes. One of the dwellings was sold to the plaintiffs, who are husband and wife. They moved into the house as soon as it was finished. The house was provided with a wooden back stairway located on the outside. The jury was justified in finding from the evidence that because of the defendant's negligence, the bottom of the stairway was defectively and inadequately fastened to the concrete platform on which it rested, and that as a result, when the platform settled, the wooden stairway was left hanging loose and swinging in the air. The female plaintiff, not realizing what had happened, tried to walk down the back stairs and fell, sustaining serious injuries. This occurrence took place within three or four months after the plaintiffs had purchased and moved into the house.

The jury rendered a verdict in favor of both plaintiffs, for the damages so sustained. The defendant now moves for judgment notwithstanding the verdict, or in the alternative for a new trial, contending that as a matter of law there is

Stanley M. Dietz, Washington, D. C.; for plaintiff.

no liability on the basis of the foregoing facts.

█ At common law the grantor of real property was not liable for damages caused by any defect in the construction of the building after he had parted with title to the property. The rule of *caveat emptor* was applicable, Palmore v. Morris, 182 Pa. 82, 89, 37 A. 995; Smith v. Tucker, 151 Tenn. 347, 360, 270 S.W. 66, 41 A.L.R. 830; Bottomley v. Bannister, L.R. [1932] 1 K.B. 458, 468. The question presented here is a narrower one, however. Specifically, it is whether this general rule should exempt from liability a builder who is guilty of negligence in the construction of a house sold by him, if the negligence results in personal injuries to the purchaser or any other invitee.

Conditions have radically changed since the origin of the general common-law rule. Homes are being constructed on a large scale by persons engaged in the building business for the purpose of selling them to individual owners. The ordinary purchaser is not in a position to discover a latent defect by inspection, no matter how thorough his scrutiny may be, because usually he lacks sufficient familiarity with the complexities of building construction and the intricacies of applicable regulations. He should be able to rely on the skill of the builder who sells the house to him. Otherwise he would be at the vendor's mercy. The realities of modern life necessarily lead to the conclusion that the builder should be liable for injuries caused by his negligence under such circumstances, either to the purchaser or to an invitee. Any other result would be unjust and intolerable. It would encourage unscrupulous builders who may be tempted to reduce their costs and increase their profits by palming off defective and inferior construction on their customers.

█ It is the glory of the common law that it is not a rigid, immutable code. On the contrary, it is a vital, living force that endows with the breath of life a body of practical principles governing human rights and duties. These rules are subject to gradual modification and continuous adjustment to changing social and economic conditions and shifting needs of society. This characteristic is the life blood of the common law. It still exists in its pristine vigor. The spark of life is still burning bright. It has not been extinguished. The process of growth has not ceased. To be sure modifications must needs take place slowly, by degrees, one short step at a time, more like a leisurely current that may almost imperceptibly and gradually alter its banks by erosion rather than as a rapidly flowing torrent that suddenly changes its channel. So, too, the advances may come only after changes in conditions become crystallized. In other words, adaptation and modification of the rules of the common law must follow, and may not precede, altering needs of the community.[1]

It has been aptly said that, "Modification implies growth. It is the life of the law."[2] As was remarked by Cardozo,[3]

"A rule which in its origin was the creation of the courts themselves, and was supposed in the making to express the mores of the day, may be abrogated by courts when the mores have so changed that perpetuation of the rule would do violence to the social conscience."

It is not necessary to discuss this matter at greater length. It is important to observe, however, that the Courts of the District of Columbia have continuously recognized the vitality and vigor of this principle, and have applied it when occasion arose. Thus, as far back as 1893, Mr. Justice Shepard, one of the original members of the Court of Appeals of the District of Columbia, in Uter-

1. Oliver Wendell Holmes, Collected Legal Papers, p. 294.

2. Mr. Justice Brandeis in State of Wash-

ington v. W. C. Dawson & Co., 264 U.S. 219, 236, 44 S.Ct. 302, 308, 68 L.Ed. 646.

3. Mr. Justice Cardozo—The Growth of the Law, p. 137.

mehle v. McGreal, 1 App.D.C. 359, 368–369, summarized this doctrine in the following manner:

"The chief attribute of the common law has ever been its flexibility, its power of expansion and adaptation to the changing needs and circumstances of a complex civilization, advancing under the influences of learning, discovery and invention. While sudden and radical changes in its rules should only be wrought by legislative power and not by the courts, yet these should not adhere to the application of the principles made in other days under circumstances and surroundings which may have completely changed, bearing the reason of the old rule with them."

In that case the court by judicial decision partially modified the rule of the common law that had entirely relieved infants of liability for their contracts after coming of age.

In recent years the Court of Appeals for this Circuit abrogated the common-law rule which barred contribution between joint tort-feasors.[4] Another illustration is the extension of the common-law rule which allowed a husband to recover damages for loss of consortium in case his spouse sustained personal injuries as the result of the negligence of another. A reciprocal right is now accorded to the wife, which did not exist at common law, to recover for loss of consortium in case of injuries sustained by her husband.[5] Similar examples may be multiplied, but the foregoing are sufficient to indicate the attitude and trend of this jurisdiction.

Perhaps the first departure from the strict common-law rule is found in Pennsylvania, where in Palmore v. Morris, 182 Pa. 82, 90, 37 A. 995, 999, the court, while applying the general doctrine exempting the grantor from liability, added the following limitation by way of dictum:—

"And, while laying down this rule in this case, we do not intend to be understood as declaring there can be no exception to it. There may be a case where the grantor conceals from the grantee a defect in a structure known to him alone, and not discoverable by careful inspection, that the owner would be held liable, though out of possession; * * *."

The Restatement of the Law of Torts, Section 353, proposes the following rule of law:

"A vendor of land, who conceals or fails to disclose to his vendee any condition whether natural or artificial involving unreasonable risk to persons upon the land, is subject to liability for bodily harm caused thereby to the vendee and others upon the land with the consent of the vendee or his subvendee, after the vendee has taken possession, if

"(a) the vendee does not know of the condition or the risk involved therein, and

"(b) the vendor knows of the condition and the risk involved therein and has reason to believe that the vendee will not discover the condition or realize the risk.

\* \* \* \* \*

a vendor of land who conceals a dangerous condition existing on land having no reason to believe that the vendee will discover it is subject to liability for bodily harm caused thereby to the vendee and others on the land in the vendee's right."

To be sure, in accordance with their usual custom, the authors of the Restatement cite no authorities. Neither do they indicate that they are suggesting what might be deemed an advance from the common-law rule. The significant

---

4. George's Radio v. Capital Transit Co., 75 U.S.App.D.C. 187, 126 F.2d 219; Knell v. Feltman, 85 U.S.App.D.C. 22, 26, 174 F.2d 662.

5. Hitaffer v. Argonne Co., 87 U.S.App. D.C. 57, 183 F.2d 811, 23 A.L.R.2d 1366.

fact, however, is that the principle advocated in the Restatement has been adopted and applied by some jurisdictions. The first step in the direction of accepting this innovation seems to have been taken in New York, Kilmer v. White, 254 N.Y. 64, 70–71, 171 N.E. 908, 910. After quoting from a tentative draft of the Restatement, which contained substantially the same doctrine as is now found in Section 353, the court wrote as follows on this point:

"Under this rule a vendor, innocent of conscious deception, is entitled to expect that his vendee will discover a condition which would be disclosed by such an inspection as the vendee should make before taking possession. On the other hand, if the vendor conceals a dangerous condition known to him, as by painting it over, or by giving assurances that the premises are safe when he knows the contrary to be the fact, he is not entitled to assume that the vendee will discover the condition in time to prevent injury to others. The vendor desires to sell the property. Knowledge by the vendee of its true condition might prevent a sale. Therefore, the vendor's conduct must be such that it will not prevent the vendee from learning of the concealed defects by making a proper inspection. Otherwise, the vendor remains subject to liability for harm caused to the licensees of the vendee until the vendee has discovered the true condition. The fault is his, and the liability is his. * * *

"The New York rule, so far as expressed by this court, does not cast on the vendee any duty of inspection before taking possession."

In Pharm v. Lituchy, 283 N.Y. 130, 132, 27 N.E.2d 811, the New York court again applied this principle and formulated it in the following language:

"At common law it is the general rule that an owner of land ceases to be liable in negligence for its condition when the premises pass out of his control before injury results. * * * However, at common law there are exceptions and one of these is where a nuisance exists on the premises."

These rulings were followed in McCabe v. Cohen, 294 N.Y. 522, 525, 63 N.E.2d 88, in the following language:

"There was evidence from which the jury could have found that the president of the defendant-appellant knew that the fire escapes, including the stairway in question, were 'at a point where further corrosion would make them dangerous'; that he had reason to believe that the vendee would not realize the risk involved and that he failed to disclose this condition to the vendee. Under the rule approved in Kilmer v. White, 254 N.Y. 64, 171 N.E. 908, and in Pharm v. Lituchy, 283 N.Y. 130, 27 N.E.2d 811, the trial court properly refused to dismiss the complaint. Restatement of Torts, § 353."

Within the past two years this doctrine was recognized by the United States Court of Appeals for the Fifth Circuit, although only by way of dictum, in United States v. Inmon, 5 Cir., 205 F.2d 681, 684. The court stated:

"Generally, the liability of a grantor of real property for the dangerous or defective condition of the premises ceases upon the transfer of possession and control, regardless of whether the person injured is the transferee, or some third person to whom a duty of care is owed. * * * The rule is subject to the qualification that, if the grantor knows of a latent defect or danger on the premises, and misleads the transferee into believing the premises are safe, or fails to disclose the defect when he has reason to believe that it will not be discovered by him, he may nevertheless be liable for any injury resulting therefrom. Restatement, Torts, Sec. 353; see, also, Sec. 354, Com. b."

■■ In the light of the foregoing discussion, this court will adopt and apply the principle that a builder who defectively constructs a house, is liable to the purchaser or any other invitee, for personal injuries sustained by the latter, if the defect could not have been discovered on inspection by the ordinary man in the street. In this case the builder must be charged with knowledge of his own negligence. The defect was of such a character that only a person skilled in the details of building construction could have discovered it and realized its significance. Under the circumstances, the court is of the opinion that the builder and vendor should be held liable for personal injuries caused to the purchaser, or any invitee, as a result of this negligence.

Motion for judgment notwithstanding the verdict, or in the alternative for a new trial, is denied.