Timothy Kordig, a Minor, by James Kordig, Jr., His Next Friend, Plaintiff-Appellee, v. Grovedale Oleander Homes, Inc., Defendant-Appellant.

**Gen. No. 47,366.**

First District, Third Division.
June 4, 1958.
Rehearing denied June 27, 1958.
Released for publication July 18, 1958.

Hubbard, Hubbard & Dorgan, of Chicago, for defendant-appellant.

Leonard W. Golan, and Philip H. Corboy, both of Chicago, for plaintiff-appellee.

PRESIDING JUSTICE BURKE delivered the opinion of the court.

On July 21, 1956, plaintiff, then two years and three months old, suffered injuries when he fell off the basement stairs of a house which defendant had constructed and sold to plaintiff's parents. Plaintiff based his case on the absence of an extra rail extending between the handrail and the basement stairs. The jury returned a verdict for $40,000 and judgment was entered on the verdict. Defendant's motions for a directed

verdict, for judgment notwithstanding the verdict and in the alternative for a new trial were overruled. Defendant appeals from the judgment against it.

The defendant was engaged in the business of building a large number of houses on lots in Morton Grove and selling the real estate thus improved to various purchasers. It advertised in local newspapers and stated that its homes qualified for Veterans Administration guaranteed mortgages. Plaintiff's father was a veteran of World War II and in response to the advertising, he, his wife and the plaintiff, on four or five occasions in February and March, 1955, visited the housing development and inspected the model home displayed by the defendant on the site at 7120 Dempster Street, Morton Grove. On each such occasion plaintiff's parents had conversations with Donald Shonts, defendant's salesman, about purchasing a house. The plaintiff was present on these occasions. Plaintiff's parents discussed with Shonts such matters as the number of bedrooms the family would need, and the salesman in turn made various suggestions, among other things which bedroom would be most suitable for the child. Shonts testified that he knew the Kordigs had children. On several of these occasions the entire Kordig family descended the stairway into the basement of the model house and one occasion the mother descended part way down the basement stairs with the plaintiff and watched her husband and a daughter as they inspected the basement below. On this occasion the plaintiff stood between his mother and the edge of the stairs and held on to the guardrail which was installed between the stairs and the handrail.

On August 3, 1955, the parents contracted to purchase a lot to be improved by the seller with a building for $20,664 to be paid in part from a V. A. Mortgage loan of $18,500. Raymond S. Wright, appraiser and

inspector for the Veterans Administration, inspected the site on October 12, 1955. He found the excavations complete and ready for footings, the foundation walls complete and ready for backfill. The V. A. fixed the price at $20,605 and the mortgage loan at $18,400. The August 3, 1955 contract was canceled. On December 12, 1955, the parties executed the final contract. Therein the parents agreed to buy a specified lot to be improved by defendant with a building in accordance with Plan 5483, Elevation C, filed with the V. A. under Master Panel No. 1946. The street number was 9242 Oleander Place, Morton Grove. The size of the lot was 60 x 126, price $20,605, the V. A. guaranteed mortgage to supply $18,400, earnest money paid $2,164 and the balance due $41. Plan 5483 provided for a wooden handrail on the basement stairs. It did not call for an extra rail. Budget Bureau form No. 76–R256.2 filed with the plans was entitled "Description of Materials." In it all of the materials in the house were detailed. This description of materials did not provide for an extra rail. It provided for a handrail material W. P. size 2 x 4. Wright inspected the premises for the V. A. on April 6, 1956, and made a report. He again inspected the premises on July 12, 1956. He made a compliance report that the living room should be repainted, cost $75; the grading to be completed; splash blocks to be installed; and the roads completed at a cost of $150.

On the morning of July 13, 1956, Mr. Shonts of the defendant corporation met the parents at the premises. He delivered the keys of the house to them. The father executed an "Acknowledgment" stating that he had examined the premises and found same to be satisfactory in every respect except as noted. The items shown not acceptable were: bell wire not connected; broken window pane; and two big scratches in hall. On July 18, 1956, Mr. Wright again inspected the property and made a compliance inspection report. He cer-

51

tified that the building was complete and occupied except for the topping of roads at a cost of $150. He testified further that as a general rule the builders do not install an extra rail between the handrail and the stairs. He said that an extra rail was not required by the V. A. Robert Ness, a structural engineer for the defendant, testified that the carpenter who installed the stairs in the houses in the subdivision put in the extra rail or not as he chose. During the week following July 13, 1956, the parents moved various chattels into the house and carried some of these into the basement. Each time the father came out of the basement he had to look at the rail. On July 20, 1956, the parents moved the balance of their furniture into the house and spent their first night there. Plaintiff, however, remained with a neighbor during the day. On the following day at about 2:00 P.M., plaintiff was descending the stairs from the kitchen to the basement. The father was talking on the telephone which was located next to the basement door and noticed out of the corner of his eye the plaintiff descending the basement stairs. He did not think that he saw him start downstairs. He testified that he recalls seeing his son on the third or fourth step. He hung up the telephone and started after his son. When the plaintiff was about halfway down the stairs he seemed to lose his balance and fell off the side of the stairway through the unprotected space between the stairs and the handrail to the concrete floor about four feet below. The opening between the stairs and the handrail was approximately 36 inches and the plaintiff's height was approximately 34 inches. Reputable physicians testified that plaintiff suffered a fractured skull and permanent brain damage. The defendant offered no medical testimony.

Without exception, every house built by the defendant from the same plan as the Kordig's had a guard-

rail as a part of the original construction. None of the owners requested the guardrails. Shortly after the mishap to his son the father examined 32 other houses located within a block or two of his house, all of which had been built from the same floor plan as his house at approximately the same time in the same subdivision by a corporation whose stock ownership was the same as the defendant's, and found that each house had a guardrail on the basement stairs. The construction superintendent of defendant did not know of any house constructed anywhere in the subdivision from the same plan as the Kordig's which did not have a guardrail. Plaintiff's father testified that although he was in the basement on several occasions prior to the occurrence he did not observe the absence of the guardrail.

Plaintiff argues that the defendant was negligent in failing to provide a basement stairway which was reasonably safe for use by the plaintiff, who, defendant knew, would use the stairway; that defendant was also negligent in failing to inspect the stairway and discover the absence of a guardrail on or before July 13, 1956; that the absence of the guardrail was a latent defect or created a dangerous and defective condition for which defendant was responsible; that the parents of plaintiff agreed to buy and the defendant agreed to build a house identical to the model; and that the standard to be used to determine whether or not the parents were entitled to have a guardrail installed in their home by the defendant is the standard set by it in the model house it displayed and which it agreed to construct for them and not any standard set by the Veterans Administration or the village. The railing on the basement stairs was of ordinary construction. The railing was without defect. At the time of plaintiff's fall, the right to admit or exclude persons from the house was in his parents. Eight days before plain-

53

tiff's injury defendant had ceased to have any connection with the property which had been conveyed to the parents. The railing complied with the plans made a part of the contract. The contract of December 12, 1955, between the parents and defendant superseded the previous contract or contracts. This contract stated the terms and conditions for the purchase of the land and the construction of the house. The transaction contemplated a loan from the V. A. The building was to be constructed in accordance with a certain plan filed with the V. A. The plans are referred to by number and the schedule of materials is the only schedule filed under Master Panel No. 1946. The plans provided for every part of the house and the description of every item of material.

Any one by casual inspection could see that there was no extra rail between the handrail and the basement stairs. From the time the parents took possession the responsibility for the house, including the basement stairs, was upon them and not upon defendant. Mercer v. Meinel, 214 Ill. App. 532, aff'd 290 Ill. 395; Smith v. Tucker, 151 Tenn. 347, 270 S. W. 66; Combow v. Kansas City Ground Inv. Co., 352 Mo. 934, 218 S.W.2d 539; Stone v. Heyman Bros., 124 Cal. App. 46, 12 P.2d 126; Levy v. C. Young Const. Co., 46 N. J. Super. 293, 134 A.2d 717; Palmore v. Morris, 182 Pa. 82, 37 Atl. 995.

 The plaintiff relies heavily on Colbert v. Holland Furnace Co., 333 Ill. 78, as expressing the principle controlling the instant case. In that case defendant defectively installed a floor register in the floor of a house. The end of the grating was supported by a defective cleat, not sufficiently nailed. The danger was hidden and could not be discovered except by removal of the grating. The court acknowledged the general rule to be that where an independent contractor is employed to construct and install any given

work and has done the same and it has been accepted and the contractor discharged, he is no longer liable to third persons for injuries received as a result of defective construction or installation. In affirming the judgment for the plaintiff the court concluded that: "The defective condition was hidden from ordinary observation and was a latent defect of which the owner, who accepted the work, would not be chargeable with knowledge of its defective construction." In the case at bar the plaintiff failed to establish that there was a defective condition. We hold that the absence of an extra rail was not a latent or concealed defect. In Smith v. Morrow, 230 Ill. App. 382, 388, the court said that to come fully within the scope of the definition of a latent defect, the defect must be hidden from the knowledge as well as from the sight and must be one which could not be discovered by the exercise of ordinary and reasonable care.

Plaintiff calls attention to Caporaletti v. A-F Corp., 137 F. Supp. 14, reversed by the Court of Appeals in 240 F.2d 53. In that case the court followed the rule that the ordinary purchaser is not in a position to discover a latent defect because usually he lacks sufficient familiarity with the complexities of building construction. The rule applicable to the facts of the instant case is well stated in United States v. Inmon, 205 F.2d 681. A 14 year old boy was injured by a blasting cap left on property formerly leased by the United States as part of an army camp. On appeal from a judgment for plaintiff the court reversed, saying (684):

"Generally, the liability of a grantor of real property for the dangerous or defective condition of the premises ceases upon the transfer of possession and control, regardless of whether the person injured is the transferee, or some third person to whom a duty of care is owed. See Restatement, Torts, Secs. 352, 354.

55

. . . The rule is subject to the qualification that, if the grantor knows of a latent defect or danger on the premises, and misleads the transferee into believing the premises are safe, or fails to disclose the defect when he has reason to believe that it will not be discovered by him, he may nevertheless be liable for any injury resulting therefrom."

See also Otto v. Bolton and Norris (Eng.) 2 K. B. 46, 1 All. Eng. 960; Bottomly v. Bannister (Eng.) 1 K. B. 458; Kilmer v. White, 254 N. Y. 64, 171 N. E. 908; Rufo v. South Brooklyn Sav. Bank, 268 App. Div., 52 N.Y.S.2d 469, appeal dismissed 295 N. Y. 981, 68 N.E.2d 60.

Plaintiff did not make out a case and should not have a judgment. It is unnecessary to consider the other points discussed in the briefs. The judgment of the Municipal Court of Evanston is reversed and the cause is remanded with directions to enter judgment for the defendant and against the plaintiff.

Judgment reversed and cause remanded with directions.

FRIEND, J., concurs.

BRYANT, J., specially concurs:

I reluctantly concur. It is obvious to me that the contract here was induced by a showing of the model home, which did include the extra rail, and not by any inspection, exhibition or explanation of the plans and specifications filed at the Veterans Administration. Such divergence between the inducement and the contract should not be condoned. That the defendant, in constructing all the other homes by the plans in that area, included the extra handrail, indicated its necessity as a safety device for families with children, regardless of whether the Veterans Administration had

56

incorporated it in the plans and specifications, is quite clear.

However, I must agree that the absence of the additional handrail on the stairs is not a latent defect. It was open and exposed to any person's vision who used his eyes. I must also agree that the contract which the plaintiff's parents signed incorporated by reference the plans and specifications of materials filed at the Veterans Administration, which did not include the furnishing of the additional handrail, and that the signing of that written contract merged all the preliminary negotiations in regard thereto. The house had been accepted by the plaintiff's parents and was under their possession and control. I cannot, therefore, see how there is any liability on the defendant which would make it responsible for the injury to plaintiff.