PETER KILMER, Respondent, *v.* MOLLIE WHITE, Appellant, Impleaded with Others.

(Argued May 8, 1930; decided June 3, 1930.)

*William E. Woollard* for appellant. The occasional use by workmen employed by the landlord of a scuttle in the ceiling of a piazza, for the purpose of reaching the roof to make repairs thereto, does not render the piazza a common passageway which the landlord is bound to keep in repair, in the absence of an express reservation in the lease of the right of passage. (*Peil* v. *Reinhart*, 127 N. Y. 381; *Dollard* v. *Roberts*, 130 N. Y. 269; *O'Dwyer* v. *O'Brien*, 13 App. Div. 570.) Defendant and her workmen passed through the premises leased to plaintiff as licensees, and their doing so did not have the effect of stamping the piazza over which they passed as a part of the premises, reserved by the landlord for common use. (*Fargis* v.

*Walton*, 107 N. Y. 402.) The relation of landlord and tenant, as between the defendant White and the plaintiff was dissolved by the sale and transfer of the premises. (*Matter of O'Donnell*, 240 N. Y. 99; *Stogop Realty Co., Inc.*, v. *Marie Antoinette Hotel Co.*, 217 App. Div. 555; *Proctor Troy Properties Co.* v. *Dugan Store*, 191 App. Div. 685; Real Prop. Law, §§ 223, 248.) Liability of the defendant White for the injuries of the plaintiff can be predicated neither upon the relation of landlord and tenant nor upon contract. (*Junkerman* v. *Tilyou Realty Co.*, 213 N. Y. 404; *Edwards* v. *N. Y. & H. R. R. Co.*, 98 N. Y. 245.) The sale and transfer of the premises by the defendant White relieved her from liability for an injury thereafter happening to a tenant predicable on neglect to make necessary repairs. (*Jaffe* v. *Harteau*, 56 N. Y. 398; *Trustees of Canandaigua* v. *Foster*, 156 N. Y. 354; *Wilks* v. *New York Tel. Co.*, 243 N. Y. 351; *Edwards* v. *N. Y. & H. R. R. Co.*, 98 N. Y. 245; *Franklin* v. *Brown*, 118 N. Y. 110; *Daly* v. *Wise*, 132 N. Y. 306.) The sale and transfer of the premises by the defendant White relieved her from liability for an injury thereafter happening to a tenant predicable on nuisance. (*Mayor* v. *Cunliff*, 2 N. Y. 165; *Blunt* v. *Aiken*, 15 Wend. 522; *Hanse* v. *Cowing*, 1 Lans. 293; *People* v. *Livingston*, 27 Hun, 106; *Waggoner* v. *Jermain*, 3 Denio, 311; *Swords* v. *Edgar*, 59 N. Y. 34; *Walsh* v. *Mead*, 8 Hun, 391; *Covert* v. *Cranford*, 141 N. Y. 521; *Wilks* v. *N. Y. Tel. Co.*, 243 N. Y. 360.)

*Henry J. Crawford* for respondent. The owner of a three-story apartment building, with a piazza attached to the rear of each floor, connected with each other and to the ground by stairs, and each floor rented to and occupied by a separate tenant, may be held responsible to the tenant of the third floor for injuries caused by the giving way of the rotten and defective railing of said third floor piazza, where it appears that a scuttle hole in the ceiling of the third floor piazza is the only means that the owner

has of access to his roof, and that he has reserved the use of the third floor piazza in connection with the other piazzas and stairways as a means of access to the roof of his building. (*Shinberg* v. *Strauss*, 211 App. Div. 827.) An owner of an apartment house, who had rented one of the apartments to a tenant, cannot escape liability for injuries caused to said tenant by defects in portions of the premises retained by him for his own use in common with the tenants, by parting with the title to the entire premises three days before the accident; before the termination of his lease with the injured tenant; and, without notice to the tenant; without informing the new owner of the defect; before the new owner has actual notice of the defects or reasonable time to discover same, and while the former owner is still enjoying the benefit of rent of the premises paid him by the injured tenant. (*Junkerman* v. *Tilyou Realty Corp.*, 213 N. Y. 404; *Mauro* v. *Alvino*, 152 N. Y. Supp. 963; *Grober* v. *Norton*, 183 N. Y. Supp. 731; *Neal* v. *Jefferson*, 99 N. E. Rep. 334; *Jones* v. *Parker*, 40 N. E. Rep. 1044; *Stuart* v. *Jay*, [1904] 1 K. B. 362; *Obermeier* v. *Mattison*, 192 Pac. Rep. 283.)

POUND, J. Appellant had owned a three-story apartment house on Lexington avenue in the city of Albany. Each floor was leased to a separate tenant. She had leased the upper apartment to respondent from month to month without a written lease. His tenancy began on April 20, 1926. On October 28, 1927, appellant had conveyed the premises to Joseph and Jennie Rubin by deed dated that day and recorded on the following day. The Rubins entered into possession. Thereafter, on October 31, 1927, respondent leaned against the railing of the piazza in the rear of his apartment. The top rail, made of a piece of two by four laid flat, gave way and he lost his balance, falling to the ground below and sustaining injuries for which he has recovered judgment.

His contention is that although the rail appeared to be sound, it was in fact rotten and insecurely fastened to the building and had been for some time before the accident and when respondent moved in. The evidence tended to show that appellant had notice of the defective condition in July or August, 1926, but that the respondent had not discovered it. The action was originally brought against the Rubins also, but a nonsuit was granted as to them. The case was submitted to the jury as one of negligence.

The trial justice submitted the case to the jury on the theory, *first*, that as respondent had paid the rent to the appellant to the end of the month and had received no notice of the transfer of ownership, he was still the tenant of the appellant and, *secondly*, that if the appellant had reserved to herself the common use of the piazza as a means of access to the roof, which she had undertaken to keep in repair (*Dollard* v. *Roberts*, 130 N. Y. 269, 273; *Hirsch* v. *Radt*, 228 N. Y. 100, 104), she was bound to exercise due diligence in keeping the railing in repair as a part of the common ways (*Peil* v. *Reinhart*, 127 N. Y. 381) although the landlord is under no general obligation to keep leased premises in repair (*Doupe* v. *Genin*, 45 N. Y. 119, 122) or to put the premises in repair before he leases them. (*Campbell* v. *Holding Co.*, 251 N. Y. 446, 448.)

The second proposition has been determined by the jury in favor of respondent as a question of fact although it does not appear that appellant was more than a mere licensee. The rule as stated is applied only to passages, stairways and the like, used in common by the different tenants of one building, and not to cases where the tenant merely permits the landlord to pass through leased premises to reach the roof conveniently.

The trial justice erred in charging the jury that, so far as the tenants are concerned, notice of the change in possession and ownership was necessary to change the nature of their tenancy. Respondent had ceased to be

the tenant of appellant when the accident occurred. " The transfer of the reversion, whether with the consent of the tenant or without it, is a transfer of the lease and of its rights and obligations." (*Matter of O'Donnell*, 240 N. Y. 99, 105.)   One's liability in negligence for the condition of land ceases when the premises pass out of one's control before injury results.   Such is the general rule. (*Trustees of Canandaigua* v. *Foster*, 156 N. Y. 354, 359; *Wilks* v. *New York Tel. Co.*, 243 N. Y. 351, 359.)   To this rule, certain exceptions arise.   The landlord is liable if he leases premises for the use of the public when he knows that they are unsuited therefor.   The nature of the use creates the duty.   (*Junkermann* v. *Tillyou Realty Co.*, 213 N. Y. 404, 409.)   Other conditions may give rise to other exceptions.   If the landlord has been guilty of conscious deception or has covenanted to repair, he is not exempt from liability for dangerous conditions. (*Jaffe* v. *Harteau*, 56 N. Y. 398.)   The lessor, in the absence of any agreement or fraud, is not liable to the private tenant for the present or future condition of the premises on any principles that would not be equally applicable to a similar liability imposed upon a grantor in fee after he had parted with possession.   (*Jaffe* v. *Harteau*, *supra*, p. 401.)

Another exception for the benefit of third parties may be noted.   "A person who has been in possession and control of premises on which a nuisance exists, and then leases or in other manner parts with control of the premises under circumstances from which inference may be drawn that he authorized its continuance or profited therefrom, may be held liable for any damages suffered by reason of the continuance of the nuisance thereafter." (*Zolezzi* v. *Bruce-Brown*, 243 N. Y. 490, 498; *Timlin* v. *Standard Oil Co.*, 126 N. Y. 514; *Wilks* v. *New York Tel. Co.*, *supra; Klepper* v. *Seymour House Corp.*, 246 N. Y. 85.)

A nuisance may be a dangerous condition due to negli-

gence. (*Klepper* v. *Seymour House Corp., supra; Mc-Farlane* v. *City of Niagara Falls,* 247 N. Y. 340.) But from the act of transfer of title and possession in itself no inference can arise that the vendor either authorized the continuance of the dangerous condition or intended to profit thereby. (*Zolezzi* v. *Bruce-Brown, supra.*)

The question thus arises as to the liability of the vendor for dangerous conditions existing at the time when he unqualifiedly transfers title and possession to the vendee. A proper rule applicable to such cases has been proposed in Tentative Draft No. 4 of the Restatement of the Law of Torts of the American Law Institute as follows:

" Section 222. General Rule of Non-Liability for Dangerous Conditions Existing at Time Vendor Transfers Possession. Except as stated in Section 223, a vendor of land is not subject to liability for bodily harm caused to his vendee or others while upon the land after the vendee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time that the vendee took possession."

" Section 223. Liability for Concealed Dangerous Conditions Known to Vendor. A vendor of land, who conceals or fails to disclose to his vendee any condition whether natural or artificial involving unreasonable risk to persons upon the land, is subject to liability for bodily harm caused thereby to the vendee and others upon the land in his right, after the vendee has taken possession, if

" (a) the vendee does not know of the condition or the risk involved therein, and

" (b) the vendor knows of the condition and the risk involved therein and has reason to believe that the vendee will not discover the condition or realize the risk."

Under this rule a vendor, innocent of conscious deception, is entitled to expect that his vendee will discover a condition which would be disclosed by such an inspection as the vendee should make before taking possession. On the other hand, if the vendor conceals a dangerous con-

dition known to him, as by painting it over, or by giving assurances that the premises are safe when he knows the contrary to be the fact, he is not entitled to assume that the vendee will discover the condition in time to prevent injury to others. The vendor desires to sell the property. Knowledge by the vendee of its true condition might prevent a sale. Therefore, the vendor's conduct must be such that it will not prevent the vendee from learning of the concealed defects by making a proper inspection. Otherwise, the vendor remains subject to liability for harm caused to the licensees of the vendee until the vendee has discovered the true condition. The fault is his and the liability is his. (See Comment on Sections 222, 223, Restatement, Tentative Draft No. 4, pp. 189–191.)

The New York rule, so far as expressed by this court, does not cast on the vendee any duty of inspection before taking possession. It has been broadly stated, although by way of *dictum* merely, that the vendee is not responsible for the dangerous condition of the premises until he has had notice thereof and a reasonable time to repair it. (*Ahern* v. *Steele*, 115 N. Y. 203.) It was argued in support of the holding that to cast on the vendee responsibility for an accident which happened within an hour or a day after taking possession would be to punish him for another's fault. This rule, if applicable generally, would carry the vendor's responsibility somewhat further than the restatement does, for it would be abhorrent to our notions of justice to relieve the vendor before fixing liability on the vendee.

Such is the rule so far as it has been stated by this court. It should be noted, however, that *Ahern* v. *Steele* (*supra*) was decided by a closely divided court; that all that was essential to the decision was the holding that persons who acquire title to a pier under a will, upon the death of a prior owner, subject to an outstanding lease, the pier being out of repair at the time the lease was made and at the time of the accident for which they were sought to be held liable, are not responsible, without

actual notice of the condition of the pier; that DANFORTH, J., dissenting, held that " as soon as the defendants acquired the right to the possession of the pier, or to the rents, they were bound to know its condition and at once guard against the [obvious] danger to which the public had been before exposed " (p. 238); and that what was said by way of *dictum* in reference to the liabilities of the parties would not, in the absence of such an outstanding lease at the time of the devolution of title, apply to a dangerous condition which proper inspection could reveal. The defendants in the *Ahern* case had neither the title to the property nor its possession nor any control over it when the dangerous condition was created or before they acquired title under the will. Such a rule of non-liability would not be extended to cover the case where the vendee took title from the possessor without actual knowledge but with notice, actual or presumptive, of the dangerous condition and the risk.

EARL, J., in the *Ahern* case himself in substance (at p. 213) says, the mere fact that the owner personally occupies the premises upon which the dangerous condition exists is enough to charge him with notice of its existence unless it is " of such a character that he may not know of its harmful tendency." This rule approximates the doctrine of the Law Institute as above stated and leaves the general rule in New York in substantial accord with the Restatement.

" The general tendency has been to look no further back than the last wrongdoer, especially when he has complete and intelligent control of the consequences of the earlier wrongful act." (HOLMES, J., in *Clifford* v. *Atlantic Cotton Mills*, 146 Mass. 47, 49; cf. *Roberts* v. *Georgia Ry. & Power Co.*, 151 Ga. 241, and annotations, 14 A. L. R. 1089.)

What we have said in this connection does not imply that the new landlord was under any obligation to repair the premises for the benefit of the tenant. It is enough for the purposes of this case to hold that no liability on

the part of the appellant has been established under the relation of landlord and tenant. Indeed it has been said with much force: " The ground of liability upon the part of a landlord when he demises dangerous property, has nothing special to do with the relation of landlord and tenant. It is the ordinary case of liability for personal misfeasance, which runs through all the relations of individuals to each other." (*Willcox* v. *Hines,* 100 Tenn. 538, 549). Respondent had ceased to be the tenant of the appellant and had become the tenant of the vendee. As such his relation to appellant was that of one on the premises as the licensee of the vendee. If respondent is to recover, he must rely on the rules which govern the liability of one who sells land with dangerous conditions existing thereon at the time of the transfer.

The judgment of the Appellate Division and that of the Trial Term should be reversed and a new trial granted, with costs to abide the event.

CARDOZO, Ch. J., CRANE, KELLOGG, O'BRIEN and HUBBS, JJ., concur; LEHMAN, J., not sitting.

Judgments reversed, etc.