HARRY GOLDBERG, Plaintiff, *v.* FRANCES ENGELHARD, Defendant.

City Court of New York, Kings County, January 5, 1933.

*Philip Cashman*, for the plaintiff.

*James E. Turner*, for the defendant.

GEISMAR, J. This is a motion for a new trial stipulated to have been made by plaintiff at the term upon the minutes, after dismissal at the end of plaintiff's case.

Plaintiff was a tenant in a two-family house owned by defendant. The house consisted of a store on the ground floor and two apartments side by side at the top of a single stairway rising from the ground floor. For the purposes of this motion, the evidence shows that the landlord defendant was constantly in possession and occupation of one of the apartments and that the plaintiff occupied the other under a verbal lease. Plaintiff testified that in the conversation of leasing and as a part of the lease, the landlord contracted as follows: " The landlord said he was going to take care of the apartment, take care of the hall and stairways and everything what is necessary to fix. He was going to take care of the house himself because he lives there with me on the same floor, etc., etc., etc. He was going to take care of the whole repairing, whatever is necessary on the house, on the stairway and on everything." Plaintiff then testified that after having given the landlord reasonable notice of a hole in the carpet on the common stairway, he tripped over the hole and was injured. The question is thus

presented whether the landlord is answerable in tort for a violation of the covenant to repair or whether it was the duty of the tenant to repair and sue, since the tenant could hold the landlord only for a breach of contract.

There are broad expressions in some cases, and not properly delimited, which seem to hold that a two-family house is somehow wholly in a class by itself with respect to which a landlord's contract to repair never carries a tort liability. This impression of the law seems widespread. On settlements for infants I have had attorneys repeatedly tell me that the defendant landlord was not liable, " because it is a two-family house." This view seems based on such broad expressions as the following: " A landlord is not liable in damages for injuries received by a tenant because of a failure to make repairs in the leased premises even though the landlord has agreed to make them. * * * This rule, however, is not applicable in the case of tenement houses, where, because of the provisions of the Tenement House Law, the landlord may be held." (*Jarchin* v. *Rubin*, 128 Misc. 437, the premises being a two-family house.) Again it is stated that " A tenant cannot maintain an action against his landlord to recover damages for personal injuries because of the landlord's negligence in failing to keep his contract to repair." (*Cuilhe* v. *Ackerman*, 58 Misc. 538, Appellate Term, First Department.) It seems to be a fair deduction from these statements that if the house be not under the Tenement House Law, as two-family and one-family houses are not, the landlord is never liable in tort for breach of a contract to repair.

A more extended examination of the cases, however, convinces me that this cannot be the law, for if so a large number of cases in New York would have to be held erroneous. Briefly stated, the rules of law applicable seem to be: (a) At common law, for failure to make repairs inside or upon premises *wholly demised* to a tenant, the landlord is not answerable in tort for violation of contract to repair; (b) but for injuries from defects in the premises or some part thereof not so demised and over which the landlord retains or shares control, or where he has merely demised an easement, the landlord is liable in tort for such violation; (c) where the common law has been changed by statute such as the Tenement House Law or Multiple Dwelling Law, the landlord is liable in tort for defects in any and all parts of the premises; (d) where the landlord has surrendered his common-law rights by contract or inducements causing a change of position, the landlord is liable in tort; (e) where the landlord maintains or knowingly permits a nuisance causing defects within the premises even though wholly demised, the landlord is liable in tort. But this series of cases under this last

subdivision, proceeding and based upon the principle of nuisance, need not be discussed here because not really germane to the subject under our immediate purview in the instant case.   Probably under this heading may be classified such cases as *Lissner* v. *Weingarten*, twice affirmed without opinion (231 N. Y. 527 and 189 App. Div. 908).   (See, also, *Kilmer* v. *White*, 254 N. Y. 64; *Zolezzi* v. *Bruce-Brown*, 243 id. 490; *Wilks* v. *N. Y. Telephone Co.*, Id. 351.)   As a matter of course, where an easement is spoken of herein, there is meant chiefly the easement of access without which the tenant or his licensees could not reach the tenant's exclusive share of the premises.   (*Giordano* v. *Loperfide*, 203 App. Div. 164.) The Tenement House Law was enacted as applicable to the cities of New York and Buffalo in the year 1909, constituting chapter 61 of the Consolidated Laws, although its roots are to be found in earlier legislation running back to the year 1901.   All tenement and apartment house cases decided before such enactments hold uniformly that the landlord is not liable in tort for breach of contract to repair defects inside apartments demised but, by the common law, is liable in such manner for injuries from defects in the halls used in common.   (*Peters* v. *Kelly*, 129 App. Div. 290; *Peil* v. *Reinhardt*, 127 N. Y. 383; *Dollard* v. *Roberts*, 130 id. 269; *Monteith* v. *Fink-beiner*, 66 Hun, 633.)   By a parity of reasoning the same rule was applied to a two-family house (*Brenner* v. *Landsmann Co.*, 181 App. Div. 331 [1918]), in which the landlord was held for injury occurring through non-repair in the common hallways.   But for injuries occurring inside the premises wholly demised, the cases before 1901 uniformly exonerate the landlord from tort liability, whether the premises be a tenement house or not.   (*Schick* v. *Fleischhauer*, 26 App. Div. 210; *Spero* v. *Levy*, 43 Misc. 24; *Boden* v. *Scholtz*, 101 App. Div. 1; *Cuilhe* v. *Ackerman, supra; Kushes* v. *Ginsberg*, 99 App. Div. 417; *Krohnberg* v. *Lucas*, 174 N. Y. Supp. 676; *Weiss* v. *Valenstein*, 79 Misc. 229; *De Negro* v. *Christman*, 77 id. 149.)   A clear example of the rule is to be found in *Peil* v. *Reinhardt* (127 N. Y. 383), which says expressly that if the stairway was used in common the landlord is liable, but if the stairway had been demised in the lease, he would not be liable.   To hold a landlord in tort for injuries suffered inside the demised premises there must be (1) either a statute or (2) something over and above the contract to repair, causing a change of position.   Before the enactment of the Tenement House Law there were local statutes attaching a tort liability to the landlord.   (Charter of City of Brooklyn, 1863, § 37, tit. 13, Laws of 1873, chap. 863, protecting egress to the roof and fire escapes.)   Under such a statute, equally with the later Tenement House Law, the landlord's liability in tort was

held as fixed. (*Willy* v. *Mulledy*, 78 N. Y. 310.) Examples of something " over and above the contract to repair," thus engrafting a tort liability upon the landlord, are *Neglia* v. *Lielouka* (32 Misc. 707), where the landlord promised to repair " if the tenant did not move out," and *Dunn* v. *Robins* (20 N. Y. Supp. 341), where, in addition to the contract, the landlord promised " to pay any damages " from water leaking from overhead.

At present, under the Tenement House Law operative in the city of Buffalo and under· the Multiple Dwelling Law operative in New York city, the landlord's liability in tort for injuries caused in any part of the house, whether or not demised, is clearly established in the case of *Altz* v. *Leiberson* (233 N. Y. 16). Therein it is said significantly enough: " At common law there was no duty resting on the landlord of an apartment house to repair the rooms demised. (*Golob* v. *Pasinsky*, 178 N. Y. 458.) His duty of repair was limited to those parts of the building which the occupants enjoyed in common. (*Dollard* v. *Roberts*, 130 N. Y. 269.) The Tenement House Law (Conscl. Laws, ch. 61) has changed the measure of this burden." These rules are clearly restated in *Cullings* v. *Goetz* (256 N. Y. 287) with respect to a situation where the facts show that the lessee has possession and dominion which are " exclusive and complete," whereupon the landlord under New York law cannot be held in tort. The American Law Institute, as stated in *Cullings* v. *Goetz*, in its Restatement of the Law of Torts (¶ 227) contends for the opposite view, deemed in some quarters as the more progressive view, but frankly concedes that the law is settled to the contrary in the State of New York. Seemingly the only conflict with this uniform holding in New York is a dictum in *Edwards* v. *Railroad Co.* (98 N. Y. 245), which, however, is explained in *Miller* v. *Rinaldo* (21 Misc. 470). (See, also, *Clancy* v. *Byrne*, 56 N. Y. 133.) In order to avoid liability under these now well-understood rules, it may be noted that it is now becoming quite customary for landlords to insert clauses in leases broadly exempting them from these legal liabilities with respect to property, whether or not wholly demised. (*Kirshenbaum* v. *General Outdoor Adv. Co.*, 258 N. Y. 489.)

It follows that since in the instant case the evidence is that the injury occurred not in the part of the two-family house wholly demised to the tenant, but in the part over which the landlord retained control, a sufficient *prima facie* case in this respect was made by the plaintiff fastening a tort liability upon the landlord for violation of the covenant to repair. (*O' Keefe* v. *Krapf*, 219 App. Div. 746.) Hence the motion for a new trial must be granted. Let the cause be set at the head of the day calendar, Trial Term, Part 1, for January 10, 1933.