H. L. PERKINS, J. W. PERKINS AND N. C. NEWMAN, PARTNERS, v. B. L. LANGDON.

(Filed 3 February, 1950.)

**1. Partnership § 1a: Landlord and Tenant § 1—**

> The fact that lessor is to receive as rent a percentage of the proceeds or net profits of the business, does not constitute lessor a partner therein. G.S. 42-1.

**2. Landlord and Tenant § 3—**

> In the absence of a stipulation or covenant to the contrary, a landlord has a right to sell leased premises.

**3. Landlord and Tenant § 16½—**

> Lessees' allegations to the effect that lessor had sold the leased premises during the existence of their three year term, and that they had been damaged as a result of such sale, standing alone, are insufficient to state a cause of action. The rights of the respective parties upon the landlord's sale of the reversion discussed by MR. JUSTICE DENNY.

**4. Pleadings § 23—**

> Where the Supreme Court sustains demurrer *ore tenus* upon appeal, plaintiffs may apply for leave to amend their pleadings. G.S. 1-131.

APPEAL by defendant from *Patton, Special Judge,* at May Term, 1949, of ALAMANCE.

Civil action to recover damages for alleged breach of contract for the use and occupancy of two tobacco warehouses in the City of Fayetteville, N. C.

The plaintiffs allege, among other things:

1. That the negotiations between the plaintiffs and the defendant culminated in a contract on or about 15 July, 1947, under the terms of which the defendant agreed to lease his two tobacco sales warehouses,

known as Lafayette and Cape Fear warehouses, to the plaintiffs for the three leaf tobacco market seasons of 1947, 1948 and 1949. That the other essential terms of said contract and agreement were and are as follows: That the plaintiffs were to have possession of the said warehouses for each of the leaf market seasons of 1947, 1948 and 1949, not less than two weeks before the border leaf market officially opened in each of said years and were to surrender possession at the expiration of one week after the Fayetteville leaf market was officially closed for each of said seasons; the defendant contracted and agreed to furnish warehouse tobacco trucks, tobacco baskets and scales, which equipment was to be inventoried at the beginning of each marketing season at the prevailing market price and, in the event of the loss or destruction of any such equipment, the lessees, at the end of the tobacco market season, would pay the defendant the inventory price of such lost or destroyed equipment; that the plaintiffs would pay as rental for the use of said warehouses and equipment 30% of the plaintiffs' gross commissions on all tobacco sold except tobacco sold directly or indirectly by the plaintiffs as operators, which sales are known in the trade as "house sales," together with 30% of all amounts collected by the plaintiffs as tobacco basket rentals; that the plaintiffs would pay the expense of all scale adjustments required during the tobacco market seasons and to pay all warehouse operating expenses; that the percentage of gross commissions to be paid to the defendant was to be credited or posted in favor of the defendant at the close of each sale and remittance to be made by the plaintiffs weekly through each marketing season.

2. That after making and entering into the aforesaid contract and agreement the plaintiffs and the defendant agreed that a memorial of said contract should be put in writing and executed by the parties. A written memorial of said agreement was prepared by the defendant's attorney and delivered to the plaintiffs on or about 15 July, 1947, for execution by the plaintiffs and defendant. That, upon receipt of said written memorial, the plaintiffs presented it to the defendant for his signature, whereupon the defendant announced that notwithstanding that the said memorial was drawn in accord with the agreement between the parties and correctly embodied the agreement, he would nevertheless refuse to sign it because he had decided that he wanted to insert in the agreement a provision permitting him to cancel the entire agreement in the event of a sale by him of said warehouses. That the plaintiffs protested and insisted that the defendant should abide by his contract and reminded the defendant that they had incurred great expense in preparation for the operation of said warehouses for a period of three years and that the defendant had known during all of the negotiations that the plaintiffs would not enter into a contract of lease of said warehouses for

a shorter period than three tobacco market selling seasons. That, notwithstanding the plaintiffs' objections and protests, the defendant, without denying the terms of the contract which he had made and entered into with the plaintiffs, as hereinbefore alleged, refused to execute the written memorial. That, pursuant to the terms of the contract and agreement between the plaintiffs and defendant, the plaintiffs entered into possession of the said warehouses and operated the same throughout the tobacco market season of 1947. That, as the result of the efforts and long experience of the plaintiffs, the operation of said warehouses for the 1947 market season was successful and the plaintiffs paid to the defendant the sum of $22,401.25, representing 30% of the plaintiffs' gross commissions in the sale of tobacco and the rental of tobacco baskets and in addition thereto paid the defendant the sum of $374.00 for the loss in inventory of equipment furnished by the defendant. That the said amounts of money were paid to the defendant in compliance with the terms and provisions of the plaintiffs' contract with the defendant and all of said payments were accepted by the defendant without objection or protest.

3. That on or about 25 January, 1948, the defendant advised the plaintiffs that he had sold the warehouses which he had theretofore leased to the plaintiffs for the tobacco market seasons of 1947, 1948 and 1949. The defendant has wrongfully breached said contract entered into with the plaintiffs and by selling said warehouses has deprived the plaintiffs of the use and occupancy thereof for the remaining term of said contract to the great damage of the plaintiffs as herein alleged.

From a verdict and judgment in favor of the plaintiffs, the defendant appeals and assigns error.

*Brooks, McLendon, Brim & Holderness and James R. Nance for plaintiffs.*

*Robert H. Dye and Cooper, Sanders & Holt for defendant.*

DENNY, J. The defendant demurred *ore tenus* to the complaint in this Court, on the ground that it does not state a cause of action against the defendant. A careful consideration of all the allegations contained in the plaintiffs' complaint and the amendments thereto, leads us to the conclusion that the demurrer should be sustained.

After interposition of the demurrer, counsel for plaintiffs argued that the terms of the lease were such as to constitute a joint enterprise, and therefore the lessor and the lessees were operating the warehouses as partners. We do not concur in this view. The provisions of G.S. 42-1 are controlling on this point, which statute reads as follows: "No lessor of property, merely by reason that he is to receive as rent or compensation

for its use a share of the proceeds or net profits of the business in which it is employed, or any other uncertain consideration, shall be held a partner of the lessee." *S. v. Keith,* 126 N.C. 1114, 36 S.E. 120; *Lawrence v. Weeks,* 107 N.C. 119, 12 S.E. 120; *Day v. Stevens,* 88 N.C. 83.

The gravamen of plaintiffs' cause of action is the sale of the leased warehouses before the expiration of the lease. But the weakness of the plaintiffs' position lies in the fact that the lease contains no stipulation against a sale of the leased properties during its existence. It is quite clear, from an examination of the pleadings, that the plaintiffs do not allege that the defendant made any promise to them not to sell the warehouses during the existence of the lease. The only controversy between them on this point, was whether or not the lease was to be canceled if the lessor should sell the leased properties before the expiration of the lease.

"The owner of leased property may sell it during the continuance of the lease, and the lessee cannot prevent the landlord from selling the premises, subject to the lease, in the absence of covenants, or resist a change of landlords." 51 C.J.S., p. 895, 35 C.J. 1213.

It is also said in 32 Am. Jur. 99: "A landlord may transfer his reversion, or any part thereof, . . . his right to make such transfer is incident to his right of property and necessary to the full enjoyment of it. It is generally held that in the absence of a stipulation to that effect in the lease, a voluntary transfer of the reversion by the landlord neither terminates the leasehold estate nor deprives the tenant of any of his rights under the lease. . . . On the other hand, there is authority to the effect that where the lessor transfers the reversion to an innocent purchaser for value who had no notice of the tenancy, and nothing sufficient to put him upon inquiry existed at the time of the sale, the transfer destroys the leasehold, is a wrong to the lessee, and renders the lessor liable to the lessee in an action at law for damages."

Likewise, Tiffany Real Property, Third Edition, Vol. 1, Chap. 5, Section 110, has this to say about the transfer of reversion: "The lessor's reversion, or estate in reversion, may be transferred by the lessor to another, and by the latter again transferred, and so again by the last transferee, and each transferee becomes the landlord for the time during which he holds title to the reversion. The ordinary mode in which such a transfer, with its consequent change of landlords, occurs, is by voluntary conveyance by the lessor, or by his transferee, of his estate in the land. The conveyance need not refer in terms to the lease, a conveyance of the premises by the landlord being necessarily subject to the rights of the tenant, and consequently being of a reversionary interest only, provided the grantee, or a purchaser for value, has notice, actual or constructive, of the lease. Such notice the grantee may have from the tenant's posses-

sion of the premises or from the record of the lease, if the lease is within the recording laws, as leases, except for brief periods, usually are. In case the lease is within the recording laws, and is not recorded, and the grantee, being a purchaser for value, has no notice thereof otherwise, he will take free from any rights in the tenant under the lease. If, on the other hand, the lease is not within the recording laws, the grantee, although a purchaser for value, and without notice thereof, will, it seems, take subject thereto."

The right of a landlord to sell leased premises, in the absence of a stipulation or covenant not to do so, is supported by the overwhelming weight of authority. Thompson on Real Property (Permanent Edition), Vol. 3, Chap. 23, Sec. 1380; *Grover v. Norton,* 183 N.Y.S. 731; *Friedlander v. Rider,* 30 Neb. 783, 47 N.W. 83; *Peterman v. Kingsley,* 140 Wisc. 666, 123 N.W. 137; *Kilmer v. White,* 254 N.Y. 64, 171 N.E. 908; *In re O'Donnell,* 240 N.Y. 99, 147 N.E. 541; *Hughes v. Donlon,* 149 Tenn. 506, 261 S.W. 960, 35 A.L.R. 506; *Wilson v. Beck* (Texas Civil Appeals), 286 S.W. 315; *Garetson v. Hester,* 57 Cal. App. 2d 39, 133 Pac. 2d 863.

Moreover, rents due under a lease follows the reversion. G.S. 42-2; *Kornegay v. Collier,* 65 N.C. 69; *Bullard v. Johnson,* 65 N.C. 436; *Holly v. Holly,* 94 N.C. 670.

It does not appear from the plaintiffs' pleadings whether the plaintiffs were in the actual possession of the premises in question at the time the defendant sold the warehouses, or whether the possession had been released to the defendant for the interim period between seasons. Furthermore, the pleadings are silent as to whether the purchasers of the leased premises knew of the existence of the outstanding lease at the time they purchased the properties, or whether they were innocent purchasers for value and had no notice of the tenancy and nothing sufficient to put them on inquiry existed at the time of the transaction. Neither is it alleged that plaintiffs made any demand on the new owners of the property for the possession of the leased premises during the 1948 marketing season, in accordance with the terms of their lease or that such possession was refused. What the facts are in this respect, will no doubt have a material bearing on the future course of this litigation.

But when the allegations of the plaintiffs' pleadings are considered in light of the authorities cited herein, we hold that where tenants merely allege that their landlord has sold the leased premises during the existence of their lease, and that they have been damaged as a result of such sale, such allegations, standing alone, do not state a cause of action.

The demurrer *ore tenus* is sustained, the judgment below is set aside and the cause remanded to the Superior Court of Alamance County, where the plaintiffs may have leave to amend their pleadings as provided

by statute, if so advised. G.S. 1-131; *Watson v. Lee County,* 224 N.C. 508, 31 S.E. 2d 535.

Demurrer to complaint sustained.