JENNIE H. HAWK et al., Respondents, *v.* STATE OF NEW YORK, Appellant.   (Claim No. 31211.)

Third Department, December 22, 1953.

*Nathaniel L. Goldstein, Attorney-General (Wendell P. Brown and Henry S. Manley* of counsel), for appellant.

*Samuel L. Greenberg* and *Louis M. Greenblott* for respondents.

IMRIE, J. The State of New York appeals to this court from a judgment of the Court of Claims in favor of Jennie H. Hawk and Francis H. Hawk, her husband. The awards are for damages growing out of injuries claimed to have been sustained by Mrs. Hawk on December 23, 1951, by reason of a fall on an icy sidewalk on the grounds of an emergency housing project for veterans at Binghamton, New York.

On the preceding evening claimants and their daughter visited friends occupying an apartment in the Prospect Street Project at 148 Prospect Street. They left the apartment shortly after midnight. While Mr. Hawk lingered to talk to another tenant, Mrs. Hawk and her daughter proceeded along the sidewalk toward the driveway in order to reach their automobile. The sidewalk and driveway were both on the project property and constituted the only traveled way from their friends' apartment to Prospect Street. The sidewalk sloped substantially upward to the driveway level. As Mrs. Hawk ascended the incline and neared the junction of the walk and driveway, she slipped and fell on the ice. At such junction there was a breaking or crumbling away of the sidewalk on either side, leaving irregularly indented edges. There was proof that snow had fallen during the preceding week and that for several days before December 22d, the sidewalk slope had been icy and snowy, on which children are said to have slid. It also appeared that the sidewalk had not been cleaned during the week and that neither sand nor rock salt had been applied to it. The sole maintenance man for this and another project could not remember whether it had snowed on December 21, 1951, whether he had cleaned the walks during that time, or whether any rock salt or sand had been put on or was on the walks on December 22d. He did state that it was part of his duty to clean ice and snow from the walks in the winter and that, if there were ice, rock salt or sand would have been found there. He had no recollection of what care had been given the walks during the month of December before the accident.

The project was constructed under article IX-A of the Public Housing Law, on vacant land leased by the city to the State. Federal barracks were obtained and moved to the property by the State. Walks and driveways were constructed under the supervision of the Department of Public Works. On October 15, 1946, through its Commissioner of Housing, the State leased the project to the city. Under the terms of the agreement the city must keep the property in good repair, though it may make no alterations, additions or improvements without the

written consent of the lessor. Books, records and accounts are to be kept in the manner required by the commissioner, to whom its operating budgets must be submitted for approval. Any surplus of income is to be paid over to the State housing fund. Any deficit determined to have resulted from the ordinary operation of the project in accordance with the terms of the agreement is to be paid by the State.

An official of the Division of Housing testified that his division made regular inspections of the physical condition of the project, instructing the city's managing agent to make needed repairs. He said, also, that the division had the final word as to the number of project employees and their remuneration, the approval or disapproval of purchases, and the responsibility of instructing the city's managing agent as to the performance of his duties.

It was a question of fact for the court below to determine whether there was such a reservation of control by the State as to make it liable for the maintenance of the premises in proper repair. (*Antonsen* v. *Bay Ridge Sav. Bank,* 292 N. Y. 143, 146; *Scudero* v. *Campbell,* 288 N. Y. 328.) The finding of such control and supervision of the operation and maintenance of the project is amply supported in the record. The agreement of October 15, 1946, is more a management agreement than a lease and the relationship of the parties more that of principal and agent than of lessor and lessee.

These claimants were not bare licensees who were required to take the premises as they found them. They were the guests of a tenant. A landlord is chargeable with the duty of reasonable care to one who goes to his premises as the guest or invitee of a tenant with respect to those portions of the premises retained in landlord's control. (*Bowers* v. *City Bank Farmers Trust Co.,* 282 N. Y. 442; *Loucks* v. *Dolan,* 211 N. Y. 237, 240, 241.) The fact that a tenant may know of a defective condition of the property does not charge his visitor with that knowledge. (*Loucks* v. *Dolan, supra,* pp. 240, 241.)

In *Enwright* v. *State of New York* (200 Misc. 624), cited by appellant as providing an analogy to the instant case, claimant sought recovery for injuries sustained when she stepped into a hole in the macadam surface of a street in the city of Oswego, on which a similar State project fronted. In that case the Court of Claims determined that claimants failed to show that the street in question was under the control of the State of New York or that the State owed them any duty which it had failed to perform. In the present case the court found the

existence of such control and a duty unfulfilled. The record supports the finding that the State had or should have had notice of the dangerous condition of the walk and was negligent in its care and maintenance.

The judgment should be affirmed, with costs.

FOSTER, P. J., BERGAN, COON and HALPERN, JJ., concur.

Judgment affirmed, with costs.