CHARLES W. McKENNA, Individually and as Guardian ad Litem of CHERYLANN McKENNA, an Infant, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 31314.)

Court of Claims, June 8, 1955.

*Louis Hodes, Harry F. Crofton* and *Thomas A. Powell* for claimant.

*Jacob K. Javits, Attorney-General (Robert L. Horkitz* of counsel), for defendant.

RYAN, J. Infant claimant sues to recover damages for injuries received April 3, 1951, at Lido Beach emergency housing project as the result of an accident with an allegedly defective washing machine in a laundry room. Infant claimant also sued Nassau & Suffolk Coinmeter, Inc., in Supreme Court, Nassau County. That suit was settled for a court-approved figure. Thereupon

Charles William McKenna individually and as guardian ad litem executed an instrument entitled "General Release" which contained the following clause: "This release is intended only to release Nassau Suffolk Coinmeter, Inc, and their sucessors (sic) in intrest (sic) and no-one (sic) else except that the releasor undertakes to and agrees to indemnify and hold harmless Nassau and Suffolk Coinmeter, Inc., for any liability over to anyone else that they may be held to in damages arising out of the injuries and damages sustained by the infant Cherylann Mc Kenna and her father and Guardian ad Litem Charles William Mc Kenna on April 2, 1951."

The State of New York is lessee of the housing project from the Federal Public Housing Authority. In turn the State of New York is lessor to the Town of Hempstead. The Town of Hempstead, under a permissive clause in its contract, engaged one Moriarity as agent to manage, operate and maintain the property on its behalf. Moriarity, as agent, leased an apartment to the parents of the infant. Also, Moriarity, as agent, contracted with Nassau & Suffolk Coinmeter, Inc., to install, maintain, and operate seventeen Bendix fully automatic coinmetered washing machines at various locations at the housing project and, at its own expense, to provide insurance coverage against personal injuries resulting from any equipment installed, and also to provide a contingent liability policy in favor of the State, the Town of Hempstead and the agent. The machines were to remain the property of Coinmeter and to be under its exclusive control and supervision. That contract contained the following clause: "8. *Liability and Indemnification* (a) The Company agrees to hold the State of New York the Town of Hempstead and the Agent harmless against all claims, liabilities or losses arising from injuries or alleged injuries to person or property in connection with the installation, operation, maintenance, servicing and supervision of the Machines or any other equipment installed or operated pursuant to this contract. (b) The Company agrees that the Agent is under no duty to safeguard or protect the Machines or equipment installed pursuant to this contract, and that the Agent will not be liable for any loss of or damage to such Machines or equipment or any part thereof because of fire, theft, loss, vandalism or other cause."

The Attorney-General moves to dismiss this claim on the ground that this court "does not have jurisdiction thereof because the State of New York is not properly a party to it." He argues: 1. that by reason of the indemnification agreements set forth in the general release and in Coinmeter's contract, the

situation is such that if the infant claimant should recover herein Coinmeter would be liable to the State for the amount of the recovery and thereupon claimant would be liable to Coinmeter in like amount, making a nullity of any judgment recovered in this court; and 2. that the State had no duty with respect to the Lido Beach project in any event, being merely a supervisor for the enforcement of laws respecting such housing projects.

Let us consider these points in inverse order. First, as a general rule in the absence of statute a landlord is not liable for injuries sustained by his tenant or others through a defective condition of the premises where these are in the exclusive control of a tenant. (Warren on Negligence in the New York Courts, Vol. 2A, § 2.61, Landlord, par. 2, p. 354; *Lusk* v. *Peck,* 132 App. Div. 426, affd. 199 N. Y. 546.) There are, however, certain exceptions to this rule (*Kilmer* v. *White,* 254 N. Y. 64; Restatement, Torts, Vol. 2, 1948 Supp., §§ 355, 357, 360–362). And questions of fact may arise as to whether or not the landlord reserved control. (*Bruszacynaska* v. *Ruby,* 294 N. Y. 22; *Hawk* v. *State of New York,* 283 App. Div. 225, distinguishing *Enwright* v. *State of New York,* 200 Misc. 624.)

Secondly, with respect to the indemnification clauses in the Coinmeter contract and in the release, it must be noted that the claim herein pleads not only that the washing machine was defective but that the State failed to properly guard the laundry room and failed to instruct the users of these machines in the proper care thereof. These latter allegations go to the question of the proper supervision of the premises leased and, if the facts alleged should be established by a fair preponderance of the evidence, they may disclose active negligence of the State, independent of that of Coinmeter whose negligence, apparently, was referable only to the machine itself. In other words, it may be that the State's negligence in supervision of the laundry room concurred with Coinmeter's negligence in the maintenance of the machine. Thus they might be jointly and severally liable. (*Hawkes* v. *Goll,* 256 App. Div. 940, affd. 281 N. Y. 808; *Kirchner* v. *State of New York,* 223 App. Div. 543, 546; *Kainz* v. *Goldsmith,* 231 App. Div. 171, 173; *Mateo* v. *Abad,* 239 App. Div. 376, 379.)

We now come to consider the language of the clause inserted in the document which is labeled " General Release ". Admittedly, where a release contains no reservation it operates to discharge all the joint tort-feasors. But where the instrument expressly reserves the right to pursue the others it is not tech-

nically a release but a covenant not to sue and they are not discharged. (Restatement, Torts, Vol. 4, § 885; *Gilbert* v. *Finch,* 173 N. Y. 455; *Gavin* v. *Malherbe,* 146 Misc. 51, affd. 240 App. Div. 779, affd. 264 N. Y. 403; *Rector, Church Wardens & Vestrymen of St. James Church* v. *City of New York,* 261 App. Div. 614.) It is the intention of the parties that controls. (*Bossong* v. *Muhleman,* 254 App. Div. 738.) What was the intention of the parties herein? At the time when the instrument was executed this claim against the State of New York was pending. It would have been a simple matter to compose a sentence which specifically reserved to the infant the right to prosecute her suit in this court. Instead we have the words '' This release is intended only to release Nassau Suffolk Coinmeter Inc '', etc., followed by the undertaking to indemnify, all as hereinabove quoted in full. Was it thus intended to indemnify the State of New York under all circumstances? Was the State's negligence active or passive? (*Schwartz* v. *Merola Bros. Constr. Corp.,* 290 N. Y. 145.) That may make a difference and, again, may be a question of fact, as it usually is. (*McFall* v. *Compagnie Maritime Belge,* 304 N. Y. 314, 328.)

Altogether we believe that there are several issues of fact herein which must be determined before any court can properly apply the rules of law. For these reasons the motion by the Attorney-General to dismiss the claim for lack of jurisdiction is denied. As the case is one of old issue, the claim having been filed May 9, 1952, there should be incorporated in the order to be entered a direction for an early trial.