Arthur Wachtel, J.
Plaintiff was employed by the third-party defendant as a general laborer. Said third-party defendant occupied leased premises on the third floor of a factory building, located at 119 West 25th Street, New York City. While in such employ on January 3, 1957 plaintiff sustained an accident when a portion of concrete fell from an iron beam on the ceiling.
A fellow employee, Gilbert Meyers, testified that prior to the accident he saw the foreman show the superintendent of the building ‘‘ how it (the ceiling) falls when he closes the elevator.” This was not the area where the ceiling fell in the case at bar; it was about 10 feet from where the ceiling fell upon the plaintiff. He saw the superintendent come into the premises on one occasion prior to the accident, and saw him go to the bathroom with tools; that prior to the accident he saw the superintendent do that “ any time anyone called him, if he was needed for something * * * could be once, could be twice ”; but did not see the superintendent do so after the accident; that heavy die-cutting machines are operated near the place where plaintiff was working, and the motors rest on wooden beams that are fastened to the girders; these machines vibrate when in operation.
The third-party defendant testified that he had occasion prior to January, 1957 to call the superintendent to the premises, and showed him the cracked ceiling and wall; and that the superintendent fixed the wall; that on another occasion he asked the superintendent with relation to the ceiling above the elevator doors; that he would also call the superintendent to fix the water closet, and he came up there to fix it. He never fixed any part of the ceiling. The plaintiff sues the owners of the building, Maurice L. Belkin and Joseph Belkin, and said defendants in turn have interposed a third-party claim against the employer, David Mattikow, doing business as New York Leather Embossing Company as the tenant in possession.
The lease specifically provides: ‘1 Tenants shall take good care of the demised premises and the fixtures, and appurtenances therein, and at its sole cost and expense make all repairs thereto as and when needed to preserve them in good working order and condition.”
Plaintiff concedes that, where a tenant has exclusive possession and control of business premises as in this case, the landlord has no common-law obligation to repair the ceiling. (Szcsepkowicz v. Khelshek Realty Corp, 280 App. Div. 524, 526 [App. Div., 1st Dept., 1952]; Cullings v. Goetz, 256 N. Y. 287, cited with approval in Muscelli v. Starr Contr. Co., 296 N. Y. 330, 334; Jaffe v. Harteau, 56 N. Y. 398.)
*232 However, the plaintiff contends that the landlord shared possession and control with the tenant employer. He refers to the fact that prior to the accident, the superintendent was called to the premises to look at the area near the freight elevator where the ceiling was falling, and that when the elevator was closed, the ceiling was caused to fall and that the superintendent was seen coming into the premises with tools in his hands, going to the back where the bathrooms are, to fix something. Plaintiff argues that the landlord in his lease with the tenant reserved the right to make ‘ ‘ repairs, restorations, and replacements ’ ’ if the tenant did not do such work, and that the landlord reserved the right to enter the premises to make such repairs ‘ ‘ as landlord may deem necessary. ’ ’
The law as to this phase of the case is set forth in De Clara v. Barber S. S. Lines (309 N. Y. 620). As the court there pointed out, the rule set forth by Judge Cardozo in Cullings v. Goetz (supra) is that a mere promise on the part of the landlord to make repairs at the tenant’s request is not sufficient reservation of control to ground liability. The distinction made by the court was that a covenant merely to repair is not the same as a covenant to maintain in a safe condition ‘ ‘ with supervision, adequate to the end to be achieved.” In the Be Clara case there was more than merely a covenant to repair. By the practice and procedure actually followed in that case, the defendant-landlord kept and retained a general supervision over the premises. Besides agreeing to repair upon notice, the defendant reserved “ the right at any time ” to go upon the demised property, inspect it, and “make such repairs and alterations as it shall deem necessary for its safety and preservation”. The large degree of control which this provision reflected was further accentuated both by the fact that the tenant had neither the right nor the duty to repair the premises, and by the fact that the landlord had its own watchmen to guard and police them, as well as its own superintendent of maintenance and a crew of men to inspect them, spot the defects, and make needed repairs (p. 629).
As the court said on page 630: “ A landlord who has the right to come and go upon the leased premises as he pleases for the purpose of inspection and repair and who is at liberty to correct any defect as soon as it is found, must be regarded as having thereby reserved a privilege of ownership, sufficient to give rise to liability in tort.”
The distinction in the case at bar is that the tenant did have the duty to repair the premises. The provision relied upon by the plaintiff gives the landlord the right to make the repairs if *233 the tenant fails to make them, at the expense of the tenant. The proof in the case at bar does not constitute such sharing of control as required by the De Clara case.
The plaintiff also relies upon section 255 and subdivision 2 of section 316 of the Labor Law. Section 255 of the Labor Law provides: “ In all factory buildings, every elevator and elevator opening and the machinery connected therewith and every hoist-way, hatchway and well-hole shall be so constructed, guarded, equipped, maintained, and operated as to be safe for all persons ”.
Section 316 of the Labor Law sets forth the respective duties of owners and occupiers of tenant-factory buildings. Subdivisions 1 and 2 provide that: 6 ‘ the person operating a factory * * * shall be responsible for the observance of the provisions of this article, anything in any lease or agreement to the contrary notwithstanding ”, “ The owner of a tenant-factory building, whether or not he is also one of the occupants, instead of the respective tenants, shall be responsible for the observance of the following provisions of this article, anything in any lease to the contrary notwithstanding: Section two hundred and fifty-five, elevators and hoistways * * iS section two hundred and ninety-five, water closets. Except that the tenants shall also be responsible within their respective holdings for the observance of the provisions of the following sections: section two hundred fifty-five, elevators and hoist ways ”. Subdivision 3 provides: ‘ ‘ The tenant of any part of a tenant-factory building shall permit the owner, his agents and employees to enter and remain upon the demised premises whenever and so long as may be necessary to comply with the provisions of law, the responsibility for which is by this section placed upon the owner ’ ’.
The plaintiff contends that the area where the ceiling fell was 10 feet from the elevator; that the elevator was part of the premises that the landlord had to maintain; that the ceiling and wall were cracked and fell when the elevator was closed. He further argues that the elevator was not operating in a safe manner for otherwise the closing of said elevator would not cause the ceiling to fall, and that the closing of the elevator was the proximate cause of the falling of the ceiling. The plaintiff seeks to rely upon the provision of the Labor Law which places the responsibility upon the owner of the building with respect to the maintenance of the elevator. There is no question as to the owner’s responsibility with respect to any defective condition of the elevator. But there is no sufficient proof that the area of the ceiling involved in this case was caused to fall *234 by reason of the operation of the elevator. Section 316 does not include the maintenance of the ceiling within the area of responsibility of the owner.
The fact that the superintendent allegedly made repairs to the plumbing in the toilets does not prove control of the owner of the leased premises, because under the statute the owner himself is required to maintain the toilet facilities (Labor Law, §§ 295, 316, subd. 2; cf. Gerber v. Seaich Realty Co., 259 App. Div. 667 [1st Dept.]).
The attorney for the plaintiff seeks to charge the owner on the basis of nuisance, relying upon the rule of Pharm v. Lituchy (283 N. Y. 130). At common law, the general rule is that an owner of land ceases to be liable in negligence for its condition when the premises pass out of his control before injury results (Kilmer v. White, 254 N. Y. 64). However, as the Court of Appeals pointed out in Pharm v. Lituchy (supra, p. 132) there are exceptions to this rule, and one of these is where a nuisance exists on the premises at the time of the transfer. The rule of Pharm v. Lituchy continues liability of the owner 1 ‘ beyond conveyance at least until the new owner has had reasonable opportunity to discover the condition on prompt inspection and to make necessary repairs ” (p. 132).
However, the important factor in Pharm v. Lituchy was that prior to the conveyance by the original owner, notice of the defective condition of the ceiling was given to the agent of the said original owner, who promised to repair. The facts of the Pharm v. Lituchy case must be taken into consideration along with the restatement of the rule as set forth in Kilmer v. White (supra). As stated by the Court of Appeals in Kilmer v. White, the rule is as follows:
“1A person who has been in possession and control of premises on which a nuisance exists, and then leases or in other manner parts with control of the premises under circumstances from which inference may be drawn that he authorized its continuance or profited therefrom, may be held liable for any damages suffered by reason of the continuance of the nuisance thereafter ’ ” (p. 69).
“ But from the act of transfer of title and possession in itself no inference can arise that the vendor either authorized the continuance of the dangerous condition or intended to profit thereby” (p. 70).
‘“A vendor of land, who conceals or fails to disclose to his vendée any condition whether natural or artificial involving unreasonable risk to persons upon the land, is subject to liability for bodily harm caused thereby to the vendee and others upon *235 the land in his right, after the vendee has taken possession, if (a) the vendee does not know of the condition or the risk involved therein, and (b) the vendor knows of the condition and the risk involved therein and has reason to believe that the vendee will not discover the condition or realize the risk.’ ”
(Pound, J., in Kilmer v. White, supra, p. 70, commenting on Tentative Draft No. 4 of the Restatement of the Law of Torts of the American Law Institute, §§ 222, 223.)
There is not sufficient proof to bring the case involved within the exception noted in Kilmer v. White and Pharm v. Lituchy. There is no proof that the alleged condition of the ceiling existed at the time when the owner leased the premises to the third-party defendant, and that it was leased to the third-party defendant under circumstances from which an inference may be drawn that the owners authorized its continuance, or profited therefrom with knowledge or notice of its existence.
Accordingly, complaint dismissed. Third-party complaint dismissed.